Krupa, the Allstate Insurance Company, number 14-3764 is the first. We have Mr. Rogers and Ms. Britt. Whenever you're ready. Thank you, Your Honor. May I reserve five minutes for rebuttal? You sure can. May it please the Court. My name is John Rogers. I represent Mahali Krupa and Hina Patel with regard to the insurance claim which you filed against Allstate Insurance resulting from a flood on September 8, 2011. Your Honor, let me just go briefly. The facts are pretty simple in this case. You've got what, an August 23rd closing? Yes. You've got a September 8th flood. Sometime around there or maybe a little after, there's some discussions taking place, and the person who works for Allstate reportedly said that the policy goes back to August 23. The trouble is you find out that this is, in effect, a federal policy. Allstate is the agent, in effect, for a write-your-own policy. And there's a regulation that says that for these types of policies, you have to get your own. You can't really just tag on, isn't it? In a sense, yes, but just a few things on that. You're right. Closing was August 23rd. August 26th, my client, Hina Patel's brother, Gopal Patel, who's also a principal at Mahali Krupa, contacts the agent. The agent said that the insurance was transferred. They issue a binder evidencing insurance. So then on August 26th? August 26th is when he went to the agent's office, and then the binder was issued after the flood, but it was backdated prior to the flood by Allstate. So initially they issued a binder, and it was dated prior to the flood, so when it covered, it was in effect. And then the flood happens, and then the question comes down to whether there was coverage. Now, we don't dispute that. It's not. You've got no contract claim. That's gone. Right. Okay. And you can't assign a flood policy under this anyway. So even though you didn't plead it in a complaint, everybody now understands your cause of action is what, for misrepresentation? And estoppel. Yes. It's still estoppel. You're still going with estoppel. Yes. Estoppel's still alive here. I thought it was just a fault made or procured by misrepresentation. Yeah, there's two parts. We still have two parts alive. Where in your complaint did you raise the estoppel and misrepresentation claims? I thought they were raised in connection with the motion before the court, but actually you never amended your complaint, did you? Well, the complaint basically recited the facts and said that they were entitled to payment. It didn't specifically. Well, that doesn't quite. The title of payment for what reason? Well, it didn't in the complaint. I'll be quite honest with you. It was in one sentence at the end of the complaint that said that the required received payment for their loss. All right. Nonetheless, all state kind of understood somehow you might be making a misrepresentation claim. So. Yeah, throughout the whole process, when we answered the motion for summary judgment in our brief, we cited these same cases that were. You had already closed, right? Right. So how did you, what statement was it that you relied on that caused you to do something different than you would have done? When Mr. Patel went on the 26th of August and was told there was coverage, and that statement was evidenced by a binder that was issued predating coverage back to that day. Okay. But the closing had already happened, right? Correct. Okay. So you had already paid for this stuff, right? Yes. Okay. So the only way you could get coverage before this flood would have been to, instead of closing with cash or whatever you did, to close with a loan. But you closed before the agent made the statement. Correct. It was your understanding, though, that it was covered. Yeah. And they spoke to the seller prior to closing. The seller said he, and it's in the, I don't know if here's the argument, but it's in the transcript. My client testified. The seller spoke to the agent prior to closing. He said the easiest way to do it was to do the assignment. So they closed based upon things they were getting in policy. So they paid the money in closing to the seller for the policy. They paid whatever it cost, and then they went three days later to the agent and said, okay, now sign it. We're not suing the seller here. No. We're suing the insurance company. We're not suing the agent. You're suing the insurance company. Correct. Right? Correct. Well, the agent is, it's Allstate. She's an Allstate agent and representative. Yeah, well, there's your question. I'm not going to sue her personally. No. We do have actually a written, I said a written statement, but we just sent the written statement. Well, that's another. We don't care. And just to pick up on, you didn't bring up estoppel and negligent misrepresentation in the complaint. You also didn't file a reply brief in this case. I mean, Allstate brought up some good issues. Why didn't you file a reply to respond to those, or is it just a question at this point the client? You know, I think it comes down to whether it's procurement versus claims handling, whether the Campbell decision still applies, and the Fifth Circuit client's decisions, whether they still apply. I think it's pretty, so that's what the score has to really decide. I don't know that it comes down only to that. How about this reg? Where's that reg? The reg that says the agent is the agent for insured, not for the service. Not the insurer. Not for the insurer. Well, they say servicing agent, but I think it means insurer. Insured. It means insured. The regulation, I think, says that the agent per sale is the agent for your client, not for Allstate for this purpose. Yeah, that's what I said. Okay. Yeah, I think the Campbell court also took that reg into consideration when it decided that the issue of the claims handling versus the procurement. I think what they looked at was if there is no policy, then the reg doesn't apply. And I think that's the whole issue in this whole case is that Allstate tried to hide behind the fund insurance regulations, but and FEMA, for some reason, agrees to cover their defense, to cover them even if they would lose, which I don't understand that in the sense that if there's no policy, no coverage, and they are obviously issued a binder, well, then they just shouldn't get reimbursement from the federal government for their money. There shouldn't be any coverage. If we conclude, I'm not saying we have or will, if we conclude that payment of the state law claim for procurement, misrepresentation of procurement, if we conclude that that claim would be paid by FEMA out of the federal treasury, are we required to find that this claim is preempted by federal law? I don't believe so because there's no congressional mandate. FEMA made an internal decision. But are you saying that FEMA could pay this claim and it wasn't preempted by federal law? If they have a legal obligation to, but if they want to take that policy and agree to do it, that's their decision. No, I'm saying not. Well, your position is what, that this is payable by Allstate and not by FEMA? FEMA shouldn't pay it. Okay, FEMA shouldn't pay it. Because they have some kind of agreement with them that's outside of the scope of the federal law. Well, your position is it's not being paid by FEMA, it's being paid by Allstate. It should be paid by Allstate. Why doesn't Section 615 operate as a bar to your claim when it defines the insurance agent as acting on behalf of your client and not the WYO insurance company? Again, I think it comes down to the issue of is it the FEMA regs or is it, if there's no policy, then FEMA regs don't apply, FEMA shouldn't be paying. Then it should come back to the, it should come back to whether Allstate should pay just a state law claim. And that's what I think the court did in Campo and in Spence and those other cases. That's where they, the Fifth Circuit, that's where they came up with their line of decisions. And I think I'd ask for the Fifth Circuit's lead with regard to that in the sense of those regs shouldn't apply. And I read those regs and I did read that. Obviously, that's an issue here. How do you reconcile your position with Merrill and Heckler? Well, Merrill and Heckler were in the Supreme Court cases on that. And they said that you should know, everybody has an obligation to know what is in. Everyone knows what the law is. Even if you didn't specifically, you shouldn't know. Even if your client knew the law, the law as far as you're concerned is that the insurance company would have to pay claims for, say, to procure, whereas FEMA would have to pay contract claims. Is that your position? Yes, Allstate should pay if it's a procurement, it's not covered by the foot policy. So Merrill and Heckler is not any bar to your recovery, you say? Right, if you can spar services. In that case, it has to be a bar to your recovery for estoppel because it requires affirmative misconduct. There's no negligent misrepresentation even if it existed here. It's not affirmative misconduct. What do you have to say to that? That's a good question. That is a good question, yeah. Yeah, and our argument was your negligent misrepresentation would be the claim because of, that would be the state claim, yes. Well, is that affirmative action on behalf of the insurance agent? Failure to act, failure to procure? Well, she should have, not only that, but she should have, negligent misrepresentation, she should have bind her, they should have bind her with evidence in the prior discussion that there was insurance. I guess my time is up. Yeah, we'll just hear from your opposing counsel and get you back. Thank you. Ms. Britt. Good afternoon, Your Honor. Kim Britt for Allstate Insurance Company. Your Honor was asked who was paying this claim, and the question is, based on the Grissom v. Liberty Mutual case, there is presumption. I'm having a hard time hearing you. Is this better, Your Honor, or better? Much better. Lower it a little bit. Lower the mic. Lower it. Is that better, Your Honor? Yes. Okay. Based on the Fifth Circuit decision of Grissom v. Liberty Mutual, there is presumption that federal funds are at issue. What presumption? What regulation are you talking about that says that if, that on a failure to procure against the agent, that FEMA would pay the claim, that the federal government would pay the claim? Your Honor, we don't represent the agent, as Judge Rustani mentioned, as you also mentioned, Your Honor. 61.5E is the regulation that mandates that the agent acts for the insured and not the insurer. Well, yeah, but from that, why do you conclude that FEMA, the federal government, would pay the claim? In other words, if there's a failure to procure here, why isn't the Allstate Insurance going to pay it and not FEMA? Well, first of all, Your Honor, there is no failure to procure here simply because of the fact that all communications for a flood policy that were directed to Allstate, the company, didn't occur until after the flood loss. So if Allstate was not presented with any information or documentation to issue a flood policy – What about the claim that there was a conversation with Ms. Purcell? Was it August 26th or September 26th? According to the record, allegedly there wasn't a conversation that was in August 26th, which is after the closing of the franchise property. So that was before the flood only, by about 12, 13 days? Yes, Your Honor. The flood was September 8th, 2011. And was there a later discussion with Ms. Purcell? There was nothing in the record. But again, Your Honor, the – I thought there was a deposition testimony that the person tried to – spoke with her right around the time of the flood. Obviously, the flood happened. They were worried about whether they were covered. Well, Your Honor, I believe the deposition testimony is Mr. Grapal – I believe that is his name – contacted the agent after the flood to inquire what is the status of the transfer of the flood policy. So based on the record, as I understand it, Your Honor, there's one conversation relating to the possible transfer of the policy, and that was three days after August 23rd. But before the flood, the appellant here had the depositions that he had arranged through the buyer, the prior owner, and thought that the insurance had been transferred from the prior owner to him. So the depositions clearly show that they were under the illusion, or they thought, that the policy had been transferred from the prior owner to the new owner. And they thought that at the time that the flood occurred. Well, Your Honor, they thought that understanding was based on a conversation with the seller, Mr. Marconi, who was not deposed in this case, so there's no deposition testimony in the record, or anything that states for a fact that he was – he had a conversation with the agent. He was assured the owner, the new owner, that it had been arranged by the prior owner for the insurance to be transferred. That's – I don't know if it's true or not, but that's the record before us, the evidence of the record before us, that they thought that they had insurance before the flood occurred. And they did this by reason of having it transferred from the prior owner to them, and they thought the prior owner had arranged procurement of the new insurance through Allstate. Well, Your Honor, that goes to the heart of the negligent misrepresentation claim, and the Merrill and Heckler Supreme Court decisions. As Your Honor knows, being on the Roxbury panel, you're familiar with the flood program, and Judge Amber was very familiar with the flood program also, having read the C.E.R. and the Roxbury – We don't really care about that. What we want you to do is answer that question. Okay. Your Honor, as I said, the negligent misrepresentation claim is premised on someone saying something to somebody, and somebody detrimentally relied on it. Here, the record is clear. Nobody spoke to anyone at Allstate. The only representation that's alleged is by the agent, and based on the fact that a contents-only policy cannot be transferred – that's Article 7D of the flood policy – as all persons are charged with knowledge of federal law, there's no claim of detrimental reliance that can succeed, Your Honor. I see you have several ways of approaching this. One is this whole area is basically preempted, and there's no state law claims. That's a little hard case to make with regard to fraud in the procurement or misrepresentation in the procurement. You have another option, which is saying nobody ever made a real misrepresentation case because we don't know who relied on what about what. And the other is this regulation, and the regulation basically addresses a servicing agent. And if Allstate is a servicing agent, then Allstate can't be sued for matters regarding scope and extent of coverage. And I guess Ms. Purcell could still be sued. Yes, Your Honor. Okay, so what's your defense here? All of those? What's really important here? Well, Your Honor, to begin with, because FEMA is heavily regulated by federal law, it regulates the selling, marketing, administration, claims handling. All of that is federal law, and it's our position. Do you want misrepresentation in procurement claims preempted? Yes, Your Honor. Okay. All right. Suppose you don't win that one because there's this procurement versus claims distinction, da-da-da-da-da-da. Then what? Then, Your Honor, based on Merrill and Heckler, we believe that any claims, state law claims, are impossible of success because of the fact that all persons are charged with knowledge. I see. Because what? I'm sorry. All persons are charged with knowledge that based on Article 7D of the flood policy, a contents-only policy cannot be transferred as a matter of law. Okay, so you're going on the constructive notice. Yes, Your Honor. There should be no misrepresentation because of constructive notice. Yes, Your Honor. Assume that's true, but that doesn't mean that if the – let's say the evidence in this case is as follows, that the new owner had assurances from the prior owner who had spoke to the insurance agent that the insurance contract would be transferred to the new owner. Assume that's – I know you disagree, but assume the record reflects that. Is it your position, and assume further, that any money paid by reason of the misrepresentation in their procurement is paid by the insurance company, Allstate, not by FEMA? Is it your position that there is some regulation which provides that the failure to procure is preempted by federal law? Based on those assumptions, as I understand your question, is there is no regulation that states that. But however, Your Honor, we must look at the arrangement that was signed between Allstate and FEMA, which is a codified federal law found at 44 CFR Part 62, Appendix A. And in that, the regulation states that because FEMA regulates all of the – FEMA is paying all of the bills associated with that. And that regulation is at 62.23 I-6. So regardless of how you look at it, Allstate didn't do anything wrong at all. Well, the regulation provides for the – what's in the contract and what they can sell and so forth. But I have seen no regulation which provides that any claim against the insurance company for its failure to procure is preempted by federal law. And, I mean, what you're suggesting is wild because there's an awful lot of things that the federal government pays for. And if that be the case, there's no state law claims in any of these cases. They've all been preempted by federal law. Well, Your Honor, that is our position because we believe that because Allstate is WIO carrier, it's fiscal agent of the United States, it's doing its duty for the United States. And part of this duty is to make sure that it strictly construes and applies the regulations of the policy. And because of that, based on the arrangement that it entered into at FEMA, we believe that anything it did as it relates to how it issued the policy, how it applies to federal law, and how – if we conclude that the claim here of procurement, the money, if it turns out to be a justifiable and meritorious claim, if that claim, the procurement claim, not the contract claim, if that's payable by the insurance company and not by federal law, how can you claim at the same time that that claim is preempted by federal law if we conclude that the merits of that claim would be paid by the insurance company and not by the federal government? I think that's where it is, Your Honor. It's our position that everything that Allstate does is payable by the government. I think what you're saying – Even failure to procure? Yes, Your Honor. No, that's what I don't understand. You could point out to no regulation which sweeps a failure to procure claim to be payable under this flood insurance statute. Well, Your Honor, at the outset, the term procure is never found in any of the regulations of the flood policy. I think it's our position that regardless of how you label its failure to procure or not, the arrangement between Allstate and FEMA is the deciding factor as to who will pay the bill. Couple that with the Grissom decision where there's a presumptive conclusion that FEMA is paying this bill regardless of how you couch it, whether it's a procurement claim or a tort claim or a statewide claim. Did you make any distinction between a contract claim in this flood insurance statute and a procurement claim? Did you make any distinction? Your Honor, we did that in the reply to motion for summary judgment because the issue of procurement or any other state law claims were never brought up in the complaint or anywhere else. They were brought up because you answered in the answer. You denied that there was any failure to procure. Well, Your Honor, I think that we denied the allegations as to payment under the flood policy because in the 18-paragraph complaint, the only remedy they seek is for cover losses under the flood policy. With respect to each of the allegations that were pled, I believe our answer were either denied for lack of sufficient information or denied that we did anything wrong. Go ahead. You haven't spent much time on the regulation, 44 CFR 61.5. What makes you a servicing agent? Well, because we are the fiscal agent, what makes us a servicing agent is we are authorized as part of the arrangement with FEMA to issue the flood policy in all states' name. But it does everything. It's basically an administrator of a flood policy for the federal government, Your Honor. And that's what makes us a servicing agent. All right. If you are a servicing agent, you can win this case on 44 CFR 61.5. You won't win for your agent, but you'll win for the off-state company, correct? Yes, Your Honor. We are not here for the agent, Your Honor. All right. Article 9 provides in part, in very strong terms, it seems to indicate that the WYO insurers are not entitled to reimbursement if the claim arises as a result of negligence by the agent. Taken together with Article 3D3, does the language indicate that ordinarily FEMA has made the decision that it will not reimburse WYO insurers in instances where the agent is negligent? Your Honor, that is correct. But here you also have to look at 61.5E, that the agent is not the agent of all states. It's the agent of the insured. Well, it's two different arguments. What the judge is getting at is the fact that FEMA is not going to pay here. The question is whether all state is still off the hook because of 61.5, and this part of the FEMA program is to encourage companies like Allstate to participate, and therefore they're let off the hook directly under 61.5, even though FEMA may not be paying. Okay. As I understand your question, and I apologize if I'm misunderstanding it. Well, I was trying. If your question is, you don't see anything in the regulations that said that Allstate should not be liable for the acts of its agent. Well, I don't see anything in the regulation that says that, and I see in the regulation saying just the opposite. And the basic question is, it seems under the regulations that if there's agent negligence, that the program does not pay for that. They pay for claims handling, but they don't pay for agent negligence. So that my question to you is, unquestionably, if this is a meritorious claim, if the agent was in fact negligent in procurement, it's unquestionable, I think, under your regulations, that Allstate's going to have to pay this claim, not the public FISC, not the Treasury. So how can it be that Allstate, if liable, will pay this claim? How can it then be possible, how can you have an argument that this claim is preempted under federal law? Well, Your Honor, the reason that the regulations that you cite states that FEMA's not paying the agent's bill is coupled with what Judge Rastani, you said, is 61.5E. I think there's two different things going on here. There's 61.5 that says, if you're right about what servicing agent means, that the agent is the agent for the insured, not for Allstate. And that would mean the agent is the one who gets sued, and Allstate doesn't have to pay, but the federal government's not paying either. So the agent has to pay. Now, I don't know what kind of indemnification agreement there is between Allstate and the agent. That's another matter. But FEMA seems to be off the hook. So the only, and the sense behind 61.5, as far as I can see, is just to encourage insurance companies to participate. I don't see anywhere that FEMA's on the hook. That's what I don't see. Well, Your Honor, it's opposition. FEMA's on the hook based on the arrangement between FEMA and the government. Well, where it doesn't say in 61.5 that FEMA's going to pay. Your Honor, we have to look at it as a whole, and the contract between Allstate and FEMA is the arrangement, Your Honor. Yeah, but what if that arrangement says that if there's a negligent agent that FEMA's going to pay it? That's not right. The regulation seems to be the exact opposite. I can't. There's nothing that would indicate that if this is a meritorious claim that the government, that the United States Treasury will pay it. If this is a meritorious claim, the insurance companies have to pay it. This arrangement is an arrangement whereby the federal government has allowed Allstate and any insurance company to act in certain areas in the sale of insurance on behalf of FEMA. But there's nothing in these regulations that says if the agent is negligent in procurement, that the federal government will pick up the tab. And you have to point any regulation out to me that's to the contrary. And you are correct, Your Honor. There's nothing in the regulations that states that the insurance agent who makes any kind of negligent misrepresentation, and Allstate's going, and FEMA's going to pay for that. There's nothing in the regulations, Your Honor. You're correct with that. But that's your position. No, Your Honor. My position is, based on 61.5E, that regardless of whether or not the agent acts for the insured, so we don't have any liable, all our actions are governed by the arrangement. And because of that, U.S. Treasury funds are used to pay any claims against Allstate, whether they relate to procurement or claims handling. And I apologize, Your Honor, for running out of time. Any further questions? Thank you. Thank you, Your Honor. Mr. Rogers. Mr. Rogers, the first thing I'd like to ask you, there seems to be some discrepancy in the record as to what assurance your client had from the Allstate people, or from anyone, I should say, that they were covered for the flood insurance. What representation are you relying upon? Made by who to whom? What time frame are you referring to? I'm talking about before the flood happened. What gave your client assurances, or thought they had assurances, that the insurance policy, which previously covered the prior owner, was now transferred somehow to your client? What is the evidence in this record which supports that? The testimony of Mr. Gopal Patel, where he testified that prior to closing, the seller told him that he spoke to the agent, and the agent said that they could sign a policy. He pays the seller. Three days later, he goes to the agent's office. The agent assured him he had coverage. This is evidence by the fact that the agent issued a binder after the flood backdated, showing that that binder was evidence of the understanding that my client had when he went to the agent. Especially the binder that your client had assurances that through the old owner and the agent that you were covered for the flood insurance. So why would the agent backdate a binder if they didn't make the representation? One other question. I'm not saying it is so. Suppose we conclude somehow that your claim, if it's meritorious, if a jury believes it, that it's payable by the federal government. Would that indicate that it's preempted and you have no claim here? If you determine from the regulations that it's payable by the federal government, based upon the regulations, but if the regulations, as I believe, know in their state that the federal government has to pay, if you base it on off the date in their brief and in their document. No, I'm not saying that we have made that conclusion. I'm just saying hypothetically. If we say that this is payable by the federal government, that would indicate it's preempted, correct? I would agree with you on that. But if it's payable by all state, your position is to say this is not payable? Well, Allstate wants you to believe they have a blank indemnification here for anything resulting in flood policies, whether it be contract law, negligence law, anything could happen. They think that FEMA gives them a blank indemnification. When you read the regs, like you quickly stated in Article 9, it's not a blank indemnification. It's an indemnification based upon the actual policy itself and their administration handling of that policy. I think that's what all the cases say. It's not based upon every action they do or anything they do. What are you going to do with this Regulation 61.5 that says the agent is the agent for you, not for Allstate? Well, this is their servicing agent, though. So what is the servicing agent? In Article 9 it says agent. It doesn't say if they mean the servicing agent. So you think a servicing agent is not Allstate? I think they are agents. A servicing agent is an agent. It's just a different type of agent. Okay. The Regulation says the agent is the agent of the insured. I read that. Okay. So it's your agent. It's not the agent for this purpose of, quote, the servicing agent, which is the insurance company, correct? I think that that's limited to if FEMA is going to pay. We get back to that argument. Oh, you think it's limited to? You think this regulation is limited by whether FEMA pays or not? Well, if FEMA is not required to pay, there's no policy because procurement is not preempted. I'm just talking about what this regulation means. I'm not talking about conflict preemption over here, area preemption, whatever. I'm just talking about this regulation and what it means. Why would the regulation apply if there wasn't a FOIA policy, FEMA is not involved? As I said before, there may be a policy to encourage insurance companies to participate in this by letting them off the hook for claims about scope and extent of coverage, even where FEMA doesn't pay. That's a possibility, isn't it? I actually thought the same thing. I looked through the regs, but I couldn't find anything in their policies that would say that. I inferred that thinking, why would they do that? I looked at it. I'm just going on the words of this 61.5, and your question to me was why, and I gave you a why. What's wrong with my why? It's a good why. I give you credit. I thought the same thing. Thanks. No, I was thinking the same thing, and I thought that was the only thing I could think of that would have meant would be that they want these companies to ride it, and they want to let them off the hook. But then you read Article 9, and Article 9 seems to say the opposite in the sense that you can't, if an agent is an agent, you can't sue. But if you read Article 9, which it seems to say the opposite. Okay. So that's where I got, I looked at the same thing. I thought the same thing you thought, that maybe they just wanted, because let's face it, they wouldn't write policies if FEMA wasn't involved because it's not a good risk. It's not a good business. So the government subsidizes them, and they try to do everything they can to get these companies to write these policies. I thought about that, but then I thought, why would Article 9 then say you can sue the agent for? So you want me to say Article 61.5, the words don't mean what they sound like they mean? I don't think they apply. If there's no policy, FEMA's not paying, I don't think they apply. I think that's the. . . Okay. I see what your argument is. That's my argument with regard to that. Okay. I got it. And thank you for having an argument on this case. Thank you. Thank you for your time. Thank you to both counsel. We'll take the matter under advisement and call our last case.